# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

BOBBIE W.,[1]

                  Plaintiff,

     v.                                      3:23-CV-606
                                               (MJK)

LELAND DUDEK,
Acting Commissioner of Social Security

                  Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
VERNON NORWOOD, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Plaintiff commenced this action under the Social Security Act, 42 U.S.C.
§405(g), seeking judicial review of the Commissioner of Social Security's final
decision denying her application for benefits. This matter was referred to me, for all
proceedings and entry of a final judgment, under the Social Security Pilot Program,
N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York
in June 2018 to better protect personal and medical information of non-governmental parties, this
Memorandum-Decision And Order will identify the plaintiff using only her first name and last initial.

1

(Dkt. No. 7). Both parties filed briefs (Dkt. 12, 19, and 20), which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.    **PROCEDURAL HISTORY AND FACTS**

The parties are familiar with the procedural history and the facts of this case. The Court will include the relevant facts as necessary in its analysis below. The Court does, however, want to highlight the Appeals Council's June 15, 2020 Order which directed the ALJ, upon remand to:

> Give further consideration to determining whether the claimant has medically determinable impairments prior to her date last insured and if so, her maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, further evaluate the medical source opinions pursuant to the provisions of 20 CFR 404.1520c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.
>
> If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(T. 200-01).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to

3

perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*See Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*); see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418. But if a plaintiff establishes that their impairment prevents them from performing their past work, the burden shifts to the Commissioner to prove the final step. *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, courts are "limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian,* 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)) (internal quotation marks omitted); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault,* 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 (2d Cir. 2013) ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). Reviewing courts, however, may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions."  *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004).

## IV.    **THE ALJ'S DECISION**

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 7, 1994, the alleged onset date.

5

(T. 21). Next, the ALJ found that Plaintiff had the following medically determinable impairments: mitochondrial disorder, postural orthostatic tachycardia syndrome (POTS), sinusitis, and a superficial malignant melanoma on her right upper extremity, status post excision. (T. 21-22). The ALJ then found that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months. (T. 22). Accordingly, the ALJ concluded that Plaintiff was not disabled and did not complete the five-step sequential analysis. (T. 29).

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff argues that remand is warranted because the ALJ made numerous determinations that were not supported by substantial evidence and that the ALJ failed to apply the correct legal standards. Specifically, Plaintiff contends that the ALJ erred by:

1.  failing to find at step two of the sequential analysis that Plaintiff had a severe impairment prior to the date last insured ("DLI");

2.  not separately assessing the opinions of Plaintiff's treating sources and instead, "lumping" them together and finding them "generally less persuasive;" and

3.  substituting his own lay opinion for that of competent medical opinions.

(Plaintiff's Brief at 12-25).

Defendant contends that the Commissioner's determination should be affirmed because (1) there is substantial evidence to support the ALJ's determination that Plaintiff's impairments were not severe during the relevant period, and (2) that substantial evidence supports the ALJ's evaluation of the medical source evidence. (Defendant's Brief at 9-15).

For the reasons stated below, the Court finds that:

1. the ALJ's determination that Plaintiff did not have a severe impairment at step two of the sequential analysis was the product of legal error and not supported by substantial evidence; and

2. the ALJ failed to separately assess the opinions of Plaintiff's treating sources and instead, "lumping" them together and finding them "generally less persuasive."

## VI.  <u>STEP TWO</u>

### A. Legal Standard

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue,* 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *See Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir. 1995); *see also McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is

7

intended only to screen out the very weakest cases."); *O'Connor v. Saul,* No.1:18-CV-00740, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("The standard at step two is quite low."). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor,* 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala,* 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin,* No. 6:17-CV-06838, 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original).

Further, a severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death[,] or which has lasted or can be expected to last for a continuous period of not less than 12 months"). "[A]ny error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S. v. Comm'r of Soc. Sec.,* 577 F. Supp. 3d 190, 2022 WL 71618, at *5 (W.D.N.Y. 2022).

For an ALJ to stop at step two and not continue to the remaining steps is "an unusual case." *Dawn Lyn C. v. Comm'r of Soc. Sec., No. 3:20-CV-00545,* 2021 WL

4398372, at *1 (D. Conn. Sept. 27, 2021) ("ALJs frequently find some or all of a claimant's impairments to be less than severe. But they usually go on to conduct the rest of the five-step process, and often find that the claimant possesses the residual functional capacity to perform work that is available in the national economy. Here, however, the ALJ stopped at [s]tep [t]wo."); *see also Hudson v. Bowen,* 870 F.2d 1392, 1396 (8th Cir. 1989) ("Thus, the sequential evaluation process can be terminated at step two only in cases where there is no more than a minimal effect on the claimant's ability to work."). Social Security regulations advise that "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." *Titles II & XVI: Medical. Impairments That Are Not Severe*, *SSR 85-28,* 1985 SSR LEXIS 19, *3, [WL] at *3 (S.S.A. 1985). The regulations further provide:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued.

1985 SSR LEXIS 19, *12, [WL] at *4; *see also McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 361 (3d Cir. 2004) ("Instead, we express only the common-sense position that

because step two is to be rarely utilized as basis for the denial of benefits, ... its invocation is certain to raise a judicial eyebrow.").

## B. Analysis

The ALJ's decision that Plaintiff was not disabled only after completing step two of the sequential analysis was legal error and not supported by substantial evidence. The longitudinal medical record establishes that Plaintiff satisfied the *de minimis* threshold to warrant a more fully developed analysis of her alleged disability.

On November 17, 2014, and in response to a questionnaire from the New York State Office of Temporary and Disability Assistance Division of Disability, Dr. Readling opined that Plaintiff's iron deficiency anemia (T. 838) limited her ability to lift, carry, stand, walk and sit (T. 841). Dr. Readling further stated that all of Plaintiff's physical activities-pushing and/or pulling (which Plaintiff should never do), lifting, carrying, standing, walking, and sitting were limited by fatigue. (*Id.*). Notably, Dr. Readling opined that Plaintiff's iron deficiency anemia is a "lifetime" condition. (T. 839). Dr. Readling's responses to the questionnaire were supported by his treatment notes. (T. 843-863). Dr. Readling's June 8, 2021 medical source statement again confirmed Plaintiff's "congenital disorder of autonomic nerve dysfunction and mitochondrial dysfunction." (T. 1577).

On February 5, 2019, Dr. Shumeyko, Plaintiff's gastroenterologist, noted that he had treated Plaintiff "dating back to the 1990s" for "a functional bowel disorder" which

was later diagnosed as mitochondrial disorder with autonomic dysfunction. (T. 1717).[2]

*See Maureen B. v. Comm'r o Soc. Sec.*, No. 20-CV-1389, 2023 WL 424458, *1

(W.D.N.Y. Jan. 26, 2023) (ALJ found that plaintiff's severe impairments included

mitochondrial disease).[3] According to Dr. Shumeyko, Plaintiff's use of laxative

medications would "necessitate [Plaintiff] having instant access to bathrooms" (T.

1717).) which could not be accommodated in a job which allowed for a break in the

morning, a break in the afternoon, and a break for lunch (T. 1125). *See Lowe v. Colvin,*

*No. 6:15-CV-6077, 2016 WL 624922, at *7 (W.D.N.Y. Feb. 17, 2016)* (ALJ's decision

remanded where the ALJ failed to make specific factual findings regarding the

frequency and duration of bathroom breaks required by plaintiff). Dr. Shumeyko also

opined that Plaintiff's conditions and/or medications would diminish her concentration,

work pace, and would result in being absent from work more than four days per month.

(T. 1126). Dr. Shumeyko's February 5, 2019 assessment was consistent with his May 9,

2019 statement that Plaintiff's gastrointestinal symptoms dating back to the 1990's have

been caused by her mitochondrial disorder. (T. 1283). Finally, in his January 10, 2022

---

[2] The ALJ relies upon Dr. Shumeyko's records prepared in 1999 and 2000 to show that objective tests (CT scans and esophagogastroduodenoscopy) were negative despite her noted symptoms (which he attributed to other causes), calling out notes where he observed she had improved from prior visits. His opinion however changed many years later when Plaintiff was finally diagnosed with mitochondrial disorder, a hereditary condition, which allowed him to contextualize the pre-DLI symptoms he had observed.

[3] The Court in *Maureen B. v. Comm'r o Soc. Sec.*, No. 20-CV-1389, 2023 WL 424458, *1 (W.D.N.Y. Jan. 26, 2023) ultimately granted the Commissioner's motion for judgment on the pleadings. However, this Court finds *Maureen B.* to be instructive for purposes of its step two analysis.

medical source statement, Dr. Shumeyko stated that Plaintiff's "mitochondrial disorder [was] responsible for the symptoms that led to her hospitalization when I first met her in 1999. Since I first met [Plaintiff] she has never been completely symptom free. This is to be expected as the mitochondrial disorder has no known cure." (T. 1702). Dr. Shumeyko added that Plaintiff "requires regular infusions of fluid to maintain hydration and adequate blood pressure." (*Id*.).

Dr. Grubb opined that Plaintiff suffers from a "form of autonomic dysfunction and orthostatic intolerance consisting of the postural tachycardia syndrome (POTS) as well as syncope with periods of asystole." (T. 1123; T. 893, 894). Among other things, Dr. Grubb explained that individuals with POTS:

> become lightheaded and weak even before a major crash in blood pressure. If a POTS patient stands up too suddenly, there may be so little blood in the heart that it may collapse upon itself, causing very painful heartbeats as well. The symptoms may include orthostatic intolerance, dizziness, fainting, syncope in the upright position and sitting position, tachycardia, palpitations, chest discomfort, pain, shortness of breath, low blood pressure, lightheadedness, excessive fatigue, generalized weakness … brain fog, forgetfulness, inability concentrate, and appetite disturbance. *As you can tell by the constellation of symptoms, this indeed can interfere with a rigorous work/ academic environment, as well as inhibit the quality of life. Even sitting can cause symptoms.*

(T. 1123-24) (emphasis added). Dr. Grubb noted that POTS was a "chronic and lifelong condition." (T. 1124); *see also Alysha C. v. Comm'r of Soc. Sec.*, No. 20-CV-1178, 2022 WL 464239, *2 (W.D.N.Y. Feb. 15, 2022) (At step two of the sequential analysis,

the ALJ found that plaintiff had severe impairments of POTS and gastroparesis and continued to evaluate the remainder of the five-step sequential evaluation). [4]

The December 12, 2021 Physical Residual Functional Capacity Assessment completed by Nurse Practitioner Hartman also shows that Plaintiff's impairments satisfy the *de minimis* threshold for purposes of the step two evaluation. NP Hartman opined that Plaintiff: (1) could occasionally lift and/or carry less than 10 pounds; (2) could never "frequently" lift and/or carry less than 10 pounds; (3) could stand and/or walk (with normal breaks) no more than 5-10 minutes due drop in in heart rate and blood pressure; (4) would have to sit in a reclined position and alternate to prone position to avoid drops in blood pressure and heart rate; (5) was limited to pushing and/or pulling due to easy muscle fatigue and neuropathy. (T. 1690). NP Hartman's opinion as to Plaintiff's limitations was supported by evidence of Plaintiff's "POTS, neuro cardio genetic syncope with conclusive syncope throughout medical records and evidenced with multiple test and documentation." (T. 1690).

NP Hartman also noted postural, manipulative limitations, and environmental limitations, all of which were supported by the longitudinal medical records. (T. 1691-92). Significantly, NP Hartman noted that Plaintiff's "maternally inherited

---

[4] The Court in *Alysha C. v. Comm'r of Soc. Sec.*, No. 20-CV-1178, 2022 WL 464239, *6 (W.D.N.Y. Feb. 15, 2022) ultimately granted the Commissioner's motion for judgment om the pleadings. However, this Court finds *Alysha* to be instructive for purposes of its step two analysis.

mitochondrial disorder is also evidence of a long standing, lifelong medical condition." (T. 1694).

Medical records from Boston Medical Center document Plaintiff's mitochondrial disorder, paroxysmal tachycardia, autonomic neuropathy and iron deficiency. (T. 697). As noted above, Plaintiff's iron deficiency and anemia are expected to last a "lifetime." (T. 839). Further, a medical source statement from a Nurse Practitioner, at the University of Toledo Physicians, notes that Plaintiff has experienced symptoms of POTS since 1994. (T. 1708).

Interestingly, the ALJ fails to mention the psychiatric evaluation performed by consultative examiner David Schaich, Psy.d. who opined that Plaintiff's cognitive problems "may significantly interfere with the [Plaintiff's] ability to function on a daily basis." (T. 1063). Dr. Schaich's opinion is based, in part, on Plaintiff's reporting of "brain fog, frequent forgetting, and concertation problems." (T. 1060). Dr. Schaich's opinion is consistent with Dr. Grubb's medical source statement noted above.

Finally, the ALJ found Dr. Dhinman's response to medical interrogatories and his testimony at the April 7, 2022 hearing to be persuasive. (T. 26). While the ALJ found Dr. Dhinman's opinion to be supported and consistent with the record as a whole, she inexplicably ignored that portion of Dr. Dhinman's testimony where he opined that POTS was one of the medical impairments that Plaintiff suffered from as of December 31, 1999. (T. 58).

14

Although the ALJ notes in a footnote that there was "very limited evidence available for the relevant, remote period under review" (T. 19, n. 3), she was free but failed to consider the plethora of records after the date last insured in assessing the severity of Plaintiff's pre-DLI impairments. The Second Circuit has recognized that medical evidence obtained subsequent to Plaintiff's last insured date "is not irrelevant to the question whether [Plaintiff] had been continuously disabled …" *Arnone v. Bowen*, 882 F. 2d 34, 39 (2d Cir. 1989) (finding that medical evidence obtained before and after an applicant is insured for DIB can be used to show that a plaintiff was disabled before the specified date, depending on the nature of the disability); *see also Guzman v. Bowen*, 801 F. 2d 273 (7th Cir. 1986) (finding that an IQ test taken after the date plaintiff was last insured for DIB was relevant to show that he was disabled during the relevant period). The Second Circuit recognizes that:

> [e]vidence bearing upon an applicant's condition subsequent to the [last insured date] … is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.

*Lisa v. Sec'y of Dept. of Health & Human Servs.*, 940 F. 2d 40, 44 (2d Cir. 1991) (citations omitted).

There is clearly sufficient evidence in the administrative record for the ALJ to have concluded that Plaintiff's impairments were more than *de minimis* as of the date last insured. While the ALJ may have ultimately determined that Plaintiff was not

disabled, the ALJ's failure to complete the five step sequential analysis warrants remand.

## VII.  **EVALUATION OF MEDICAL EVIDENCE**

### A. Legal Standard

Because Plaintiff's application for benefits was filed after March 27, 2017,[5] this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), … including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 404.1520c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule"). An ALJ must articulate in their determination as to how persuasive they find all the medical opinions and explain how they considered the supportability and consistency of those opinions. 20 C.F.R.  § 404.1520c(b).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative

---

[5] Plaintiff filed her application for benefits on May 25, 2017. (T. 16, 172).

medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "[T]he strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 404.1520c(c)(1)); *see Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *16 (S.D.N.Y. Dec. 30, 2020) (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 404.1520c(c)(1)).

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Consistency "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone v. Saul*, 2021 WL 319354, at *6 (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ also may, but is not required to, explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had

17

an examining relationship with the claimant, whether the source specializes in an area

of  care, and any other factors that are relevant to the persuasiveness of that source's

opinion. 20 C.F.R. § 404.1520c(c).

An ALJ's failure to explain the supportability and consistency of the medical

opinions in the record is procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir.

2019); *see also Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d. Cir.

June 17, 2022) (finding that "the ALJ committed procedural error by failing to explain

how it considered the supportability and consistency of medical opinions in the

record"). However, the Second Circuit has recently clarified that an ALJ's procedural

error in failing to explain how he or she "considered the supportability and consistency

of medical opinions in the record" does not necessarily preclude affirmance of the

Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2. As the *Loucks* court

explained, "[d]espite [an] ALJ's procedural error," a reviewing court can affirm if "a

searching review of the record assures [the court] that the substance of the [regulation]

was not traversed." 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96). Thus,

while a reviewing court may not affirm the Commissioner's decision based on an

impermissible post-hoc rationalization, it may affirm where the ALJ's consideration of

the relevant factors can be gleaned from the ALJ's decision as a whole. *See, e.g. John*

*L.M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2-3 (N.D.N.Y.

August 18, 2022); *Ricky L. v. Comm'r Soc. Sec.*, No. 20-CV-7102, 2022 WL 2306965, at *4 (W.D.N.Y. June 27, 2022).

### B. Analysis

Even if the ALJ had determined that Plaintiff's impairments were more than *de minimis* and had completed the five-step sequential analysis, the Court would nevertheless remand this case for further proceedings. Rather than comply with her regulatory obligations to properly evaluate the opinions of Plaintiff's treating sources as to persuasiveness, supportability and consistency, the ALJ states that "[t]he record contains a number of treating source opinions that were completed well after the [Plaintiff's] date last insured" that are "generally less persuasive as they are not well supported or consistent with the [Plaintiff's] medical records through her date last insured or Dr. Dhimnan's opinion." (T.27). Plaintiff submitted medical source statements from Dr. Grubb, Dr. Shumeyko, NP Karabin, Dr. Alwan, Dr. Yanusas, Dr. Hostoffer, Dr. Siegel, and NP Hartman. However, the ALJ only makes a passing reference to the opinions of NP Hartman, Dr. Hostoffer, and Dr. Yanusas. The ALJ's decision lacks any discussion of the remaining medical source statements. Even more troubling is the ALJ's failure to comply with the Appeals Councils directive that she "evaluate the medical source opinions pursuant to the provisions of 20 CFR 404.1520c." (T. 201). As a result, the ALJ's decision is devoid of any analysis of persuasiveness, supportability and consistency.

## VIII.  <u>REMAND</u>

This matter is remanded to the Commissioner for an expedited hearing before a different ALJ consistent with this Decision and Order. Courts in this Circuit typically refrain from directing the Commissioner to assign a different ALJ upon remand. *See Hartnett v. Apfel*, 21 F. Supp.2d 217, 222 (E.D.N.Y.1998).

However, in limited instances, it is appropriate to consider whether "a fresh look by another ALJ [upon remand] would be beneficial[.]" *Vicari v. Astrue*, 05 CV 4967, 2009 WL 331242, at *6 (E.D.N.Y. Feb. 10, 2009). In such circumstances, courts, including the Second Circuit, have directed that a different ALJ be assigned on remand. "Specifically, when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate." *Sutherland v. Barnhart*, 322 F.Supp.2d 282, 292-93 (E.D.N.Y. 2004) Courts faced with this question generally consider whether the following factors are present: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. *Id.*

The Court is not questioning or raising doubt as to the ALJ's impartiality or conduct. But the Court is concerned that the ALJ has on two separate occasions,

misapplied the appropriate legal standard to the *de minimis* threshold for purposes of step two of the sequential analysis, and specifically failed to comply with the AC's instructions following the first remand. Plaintiff's Title II application for benefits was filed on May 25, 2017, almost 8 years ago, and she is entitled to have her alleged disability fully evaluated in accordance with the five-step sequential analysis, especially given the Appeals Council's June 15, 2020 Order which states in part that given the further development of the record, there was a "reasonable probability that the additional evidence would change the outcome of the decisions." (T. 200).

## IX.  REMAINING ISSUES

Because the Court is remanding this case for the reasons set forth above, it need not reach the remaining arguments advanced by Plaintiff.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this action is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated:  March 10, 2025

_____

Hon. Mitchell J. Katz

U.S. Magistrate Judge

21